NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COREY FALLEN and SHANTELL FALLEN, | Civil Action No.: 15-2286 |
| Plaintiffs, | |
| v. | OPINION |
| CITY OF NEWARK, *et al.*, | |
| Defendants. | |

**CECCHI, District Judge.**

## I.   <u>INTRODUCTION</u>

This matter comes before the Court on an Amended Complaint ("Am. Compl.," ECF No. 53) filed by Plaintiffs Corey Fallen ("Fallen") and Shantell Fallen (collectively, "Plaintiffs") against two groups of defendants.  Each group of defendants has filed a motion to dismiss some or all of Plaintiffs' claims:

(1) Defendants Joseph Fuentes ("Fuentes"), Thomas McEnroe ("McEnroe"), and the New Jersey State Police ("NJSP") (collectively, the "State Defendants") have filed a partial motion to dismiss certain counts of the Complaint against certain defendants for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 60.) Plaintiffs opposed the State Defendants' motion (ECF No. 71) and the State Defendants filed a reply brief in further support of their motion (ECF No. 76).

(2) Defendants City of Newark, Joseph Hadley ("Hadley"), Sheilah Coley ("Coley") and Samuel DeMaio ("DeMaio") (collectively, the "City Defendants") have filed a motion to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule

1

of Civil Procedure 12(b)(6).  (ECF No. 62.)  Plaintiffs opposed the City Defendants' motion (ECF No. 70) and the City Defendants filed a reply brief in further support of their motion (ECF No. 78).

The Court decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  In the interest of efficiency, the Court decides both motions together.  Having considered the parties' submissions, the Court grants in part and denies in part the State Defendants' motion.  The Court grants in part and denies in part the City Defendants' motion.

## II.   **BACKGROUND**

### A. **Factual Background**

The following is an abbreviated summary of the relevant facts alleged in the Complaint.  On January 25, 2012, Defendant McEnroe (a sergeant and employee of the NJSP) was assigned to investigate the death of Denise Ramsey.  (Am. Compl. ¶¶ 15, 22.)  At some time later, Defendant Hadley (a detective and employee of the City of Newark) was assigned to work on the case.  (Am. Compl. ¶ 16, 34.)  At the time of the relevant events, both McEnroe and Hadley were assigned to the Essex County Prosecutor's Office as Homicide Detectives.  (ECF No. 62-1 at 1.)

The victim, Denise Ramsey, was a "go-go" dancer at a club called the "Doll House," located in Irvington New Jersey.  (Am. Compl. ¶ 26.)  Her remains were discovered in a vacant lot in East Orange, NJ.  (Am. Compl. ¶ 22.)  Evidence recovered at the scene included two DNA samples found on the victim's body that did not match the victim's DNA.  (Am. Compl. ¶¶ 22-25.)

During the course of their investigation, McEnroe and Hadley learned that the victim was seen having a dispute with two men at the club shortly before her disappearance.  (Am. Compl. ¶¶ 27-32.)  One of the men was soon identified as Johnny Jones III ("Jones").  (Am. Compl. ¶ 32.)  McEnroe and Hadley learned from witnesses that the two men had threatened everyone in the club and one of the men had said that they had "just beaten a murder rap in Atlanta."  (Am. Compl. ¶¶ 30-31.)

2

McEnroe and Hadley learned from an internet search that Plaintiff Fallen was one of two individuals who had recently been found not guilty of murder in Atlanta. (Am. Compl. ¶¶ 34-35.) After learning this information, McEnroe and/or Hadley obtained Fallen's photograph for use in a photo line-up. (Am. Compl. ¶¶ 36-37.) During the photo line-up, two witnesses (a DJ and a dancer at the Doll House) identified Fallen's picture as the other man (besides Jones) seen having a dispute with Ms. Ramsey at the club before her disappearance. McEnroe and Hadley launched an investigation into Jones and Fallen.

The investigation of Jones turned up leads based on phone records for Jones and Ms. Ramsey (Am. Compl. ¶ 39), including the identification of a home in East Orange where Jones was living with his father until they suddenly fled shortly after Ms. Ramsey's disappearance (Am. Compl. ¶¶ 40-42), and a hotel in Newark where Jones stayed for four days after Ms. Ramsey's disappearance (Am. Compl. ¶ 40). Officers of the NJSP and Newark police department interviewed Jones's landlord, downstairs neighbor, girlfriend, and the sister of his father's girlfriend, all of whom confirmed that Jones had been living with his father in the East Orange apartment. (Am. Compl. ¶¶ 41-42.) On March 29, 2012, authorities executed a search warrant at Jones's East Orange apartment and recovered evidence from the scene, including blood. (Am. Compl. ¶ 43.)

On the basis of the internet search and the two identifications, McEnroe and Hadley launched an investigation into Fallen. Despite numerous leads on Jones, none of the witnesses identified any connection between Jones and Fallen. (Am. Compl. ¶ 40-42.) After the photo line-up, no witness identified Fallen at all. Phone records later confirmed that Fallen was not in New Jersey at the time in question. (Am. Compl. ¶ 39.)

On September 26-27, 2012, McEnroe and Hadley traveled to Atlanta, Georgia, and worked with an investigator from the Fulton County District Attorney's Office to apply for and obtain search warrants for DNA samples from Jones and Fallen. (Am. Compl. ¶¶ 45-46.) McEnroe and Hadley executed the search warrant for Jones at his address in Jonesboro, Georgia. McEnroe and Hadley then traveled to Fallen's home in Atlanta, Georgia to execute the search warrant. (Am. Compl. ¶ 47.) When Fallen answered the door, McEnroe identified Fallen as the man for whom they were looking. (Am. Compl. ¶ 48.)

During his interactions with McEnroe, Hadley and the Fulton County District Attorney's Office on September 26-27, 2012, Fallen told them that he had never been to New Jersey (and, in fact, had only been outside of Georgia one time for a brief trip to Florida). (Am. Compl. ¶¶ 49-50.) Fallen offered evidence of his innocence, including an alibi—Fallen claimed that he had been working at his job as a line chef for the Urban PL8 restaurant down the street from his house at the time Ms. Ramsey went missing. (Am. Compl. ¶ 51.) Fallen told McEnroe and Hadley to speak with his supervisor at the restaurant, his mother, and his wife, all of whom could confirm that he had not been outside of Atlanta at the time in question. (Am. Compl. ¶¶ 52-54.) McEnroe simply responded that he had DNA evidence placing Fallen at the scene of Ms. Ramsey's murder. (Am. Compl. ¶ 56.) While in Georgia, McEnroe and Hadley met with an additional witness who provided no evidence linking Fallen to any crime. (Am. Compl. ¶ 59.)

After McEnroe submitted the DNA samples from Jones and Fallen to the New Jersey Forensic Science and Technology Center, it was determined that Jones was a contributor to both samples taken from Ms. Ramsey's body. (Am. Compl. ¶¶ 61-62.) Fallen's DNA, however, did not match any of the DNA taken from Ms. Ramsey's body. (Am. Compl. ¶ 63.)

On October 22, 2012, McEnroe and Hadley, in conjunction with other unidentified officers obtained a warrant for Fallen's arrest. (Am. Compl. ¶ 64.) The arrest warrant was obtained based, at least in part, on an affidavit from McEnroe, which Plaintiffs contend contained numerous material misrepresentations. (Am. Compl. ¶¶ 65-72.)

On October 24, 2012, McEnroe, Hadley, and an investigator from the Fulton County District Attorney's office attempted to arrest Fallen at his home in Georgia. (Am. Compl. ¶ 85.) Fallen's wife and mother advised that Fallen was at work. (Am. Compl. ¶ 85.) The following day, Fallen turned himself into the City of Atlanta Police Department, bringing with him evidence that he had been working in Georgia on the dates surrounding Ms. Ramsey's disappearance. (Am. Compl. ¶¶ 86-87.)

After turning himself in on October 25, 2012, Fallen was left in the Fulton County Jail until November 28, 2012. (Am. Compl. ¶ 91.) On November 28, 2012, McEnroe and or other New Jersey or Newark officers arrived in Atlanta, took custody of Fallen, placed him on an airplane, and extradited him to New Jersey, where he was fingerprinted and booked into the Essex County Correctional Facility. (Am. Compl. ¶ 92.) Plaintiffs allege that, while on the airplane, Fallen was denied access to a restroom and he consequently urinated on himself. (Am. Compl. ¶ 93.) In the period following his extradition to New Jersey, McEnroe and other officers allegedly threatened, verbally abused, and physically assaulted Fallen. (Am. Compl. ¶¶ 93-100.)

From the time of his arrest, Fallen continuously maintained his innocence himself and through his hired attorney, repeatedly requesting the opportunity to produce exculpatory evidence. (Am. Compl. ¶ 93-104.) In April 2013, about six months after his initial arrest, Fallen wrote to the judge presiding over his case explaining the circumstances and asking for help. (Am. Compl. ¶ 106.) The judge demanded that the New Jersey officers further investigate the case against

Fallen. (Am. Compl. ¶ 107.) After the New Jersey authorities investigated further (including for the first time looking at phone records, time sheets, and interviewing co-workers), it was determined that Fallen was not in New Jersey at the time of Ms. Ramsey's disappearance. (Am. Compl. ¶¶ 108-111)

On April 20, 2013, the judge presiding over Fallen's case released him from custody. (Am. Compl. ¶ 112.) Subsequently, the charges against Fallen were presented to a grand jury, which returned a "no bill" on May 17, 2013. (Am. Compl. ¶ 114.)

Fallen's imprisonment consisted of six months in jail, five of which were nearly 1,000 miles away from his family. (Am. Compl. ¶ 115.) During that time, Fallen was forced to pay an attorney to defend himself. (Am. Compl. ¶ 115.) Fallen also was imprisoned during the birth of his child. (Am. Compl. ¶ 115.)

### B. Procedural Background

On September 24, 2014, Plaintiff Fallen instituted this action against McEnroe and Hadley in the State of Georgia, Fulton County Superior Court. (ECF No. 1, Ex. A.) Defendants removed the case to the Northern District of Georgia on December 5, 2014. On March 31, 2015, the Northern District of Georgia granted McEnroe and Hadley's motion to transfer the case to the District of New Jersey.

On May 15, 2015, Fallen filed a motion to amend the Complaint, which was granted on July 17, 2015. (ECF No. 51.) On July 22, 2015, Plaintiffs (Fallen and his wife) filed the Amended Complaint against the current named defendants. On August 27-28, 2015, the Defendants filed their motions to dismiss.

For simplicity, the following is a list of the Counts in the Complaint and the Defendants against whom the counts are asserted:

6

| Count # | Cause of Action | Defendants |
|---------|-----------------|------------|
| Count I | § 1983 - Monell Claim for Pattern and Practice liability | City of Newark |
| Count II | U.S. Constitution - Unreasonable Search and Seizure | McEnroe, Hadley, City of Newark, NJSP |
| Count III | U.S. Constitution - Unlawful Detention | McEnroe, Hadley, City of Newark, NJSP |
| Count IV | § 1983 – False Arrest/Imprisonment | McEnroe, Hadley |
| Count V[1] | § 1983 – Malicious Prosecution | McEnroe, Hadley, City of Newark, NJSP |
| Count VI | § 1985 – Conspiracy | McEnroe, Hadley, City of Newark, NJSP |
| Count VII | § 1983 – Supervisor Liability | City of Newark, NJSP, Coley, DeMaio, Fuentes |
| Count VIII | § 1983 – Negligent Hiring / Training / Retention | City of Newark, NJSP |
| Count IX | Negligent and Intentional Infliction of Emotional Distress | All Defendants |
| Count X | Violation of the New Jersey Civil Rights Act | All Defendants |
| Count XI | Punitive Damages | McEnroe, Hadley, Coley, DeMaio, Fuentes |
| Count XII | Per Quod Claim brought on behalf of wife | All Defendants |

All claims alleged against an individual Defendant are alleged in the Defendant's official and individual capacity.

## III.   LEGAL STANDARD

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating the sufficiency of a complaint, Courts are required to accept all well-pleaded allegations in the Complaint as true and to draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Furthermore, "[a]

---

[1] Incorrectly denoted as a second "Count IV" in the Amended Complaint.

7

pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## IV.   DISCUSSION

### A. State Defendants' Partial Motion to Dismiss

For the reasons that follow, the State Defendants' motion to dismiss is granted as to Plaintiffs' claims against Defendants NJSP and Fuentes only. The State Defendants' motion to dismiss is denied as to Defendant McEnroe.

> i. The State Defendants' motion to dismiss Plaintiffs' claims against NJSP and Superintendent Fuentes in his official capacity is granted.

The State Defendants move to dismiss all claims against NJSP and Superintendent Fuentes in his official capacity on two separate bases: (1) they are immune from suit under the Eleventh Amendment; and (2) they are not "person[s]" under 42 U.S.C § 1983.[2] Plaintiffs concede that the NJSP and Superintendent Fuentes in his official capacity are immune from suit in federal court under the Eleventh Amendment and are not "person[s]" under § 1983. Plaintiffs point out that this case was not originally filed in federal court, but nonetheless concede that those claims should be dismissed. Accordingly, the Court will dismiss all claims against NJSP and Superintendent Fuentes in his official capacity without prejudice.

---

[2] 42 U.S.C. § 1983 will be referred to as "§ 1983" for the remainder of this Opinion.

ii.  The State Defendants' motion to dismiss Plaintiffs' conspiracy claim is denied.

The State Defendants argue that Plaintiffs have failed to state a claim for conspiracy under 42 U.S.C. § 1985.[3]  Specifically, the State Defendants contend Plaintiffs have failed to plead a class-based animus as required to state a claim under § 1985.  *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).  Plaintiffs respond that reference to § 1985 was a mistake and the Amended Complaint was intended to refer to § 1983.  Plaintiffs ask that they be permitted to amend the Amended Complaint to reflect the properly pleaded conspiracy under § 1983.  The Court finds that Plaintiffs have stated a claim for conspiracy under either § 1983 or § 1985.  Accordingly, this claim will not be dismissed.

In order to state a § 1983 conspiracy claim, a plaintiff must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." *Novellino v. N.J. Dep't of Corr. Mountainview Youth Corr. Facility*, No. 10-4542, 2011 U.S. Dist. LEXIS 85209 (D.N.J. Aug. 3, 2011).  The allegations of conspiracy "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009).  Here, Plaintiffs have provided detailed factual allegations that numerous Defendants conspired to ignore overwhelming exculpatory evidence for purposes of solving a murder.  The Amended Complaint pleads concerted action between an officer of the New Jersey State Police and an officer of the Newark Police Department, acting together with other officers in both entities to deprive Fallen of his civil rights.  That is sufficient to state a claim for conspiracy under § 1983.

---

[3] 42 U.S.C. § 1985 will be referred to as "§ 1985" for the remainder of this Opinion.

Furthermore, Defendants contend that the Amended Complaint does not plead class-based animus required for a § 1985 conspiracy claim.[4]  However, Plaintiffs are permitted to "rely on a 'class of one' theory by alleging that a defendant intentionally and with no rational basis treated him differently from others similarly situated." *Novellino*, 2011 U.S. Dist. LEXIS 85209, at * 14. In this case, Plaintiffs have alleged sufficient facts to show that at least McEnroe treated him differently from others similarly situated.  Specifically, almost exclusively on the basis of Fallen having been acquitted on murder charges in Atlanta, McEnroe treated Fallen differently from other similarly situated potential suspects who had exculpatory evidence including an alibi. Accordingly, Plaintiffs have sufficiently pleaded all the elements of a § 1985 conspiracy claim.

iii.  The State Defendants' motion to dismiss Plaintiffs' claim of supervisory liability under 42 U.S.C. § 1983 against Defendant Fuentes is granted.

There are two ways that a supervisor can be held liable for his actions under § 1983. *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).  First, a supervisor can be liable if he or she "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.*  Second, supervisors can be liable if they "participated in violating [the] Plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Id.*

Contrary to Plaintiffs' arguments in their opposition papers, the Amended Complaint does not appear to plead any facts with respect to the policies and practices established by Fuentes or with respect to his participation in or knowledge of his subordinate's violations.  To the contrary,

---

[4] The State defendants do not appear to dispute that Plaintiffs have sufficiently pleaded the first four elements of a § 1985 conspiracy claim: (1) a conspiracy; (2) for the purpose of depriving any person of the equal protection of the laws or equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.  They only contend that Plaintiffs have not pleaded a class-based animus.

as the State Defendants point out, Fuentes's name does not appear in the fact section of the Amended Complaint. Plaintiffs' theory of liability hinges on the mere fact that Fuentes is the person in charge of NJSP. However, without more, Plaintiffs' theory would allow every plaintiff in every § 1983 claim to charge the supervisor with supervisory liability.

This Court rejects Plaintiffs' reasoning and grants the State Defendants' motion to dismiss claims against Fuentes for supervisory liability under § 1983. The same reasoning applies to Plaintiffs' claim against Defendant Fuentes under the New Jersey Civil Rights Act ("NJCRA") which was modelled after § 1983 and has therefore been interpreted consistently with § 1983. *See Tumpson v. Farina*, 95 A.3d 210, 233 (N.J. 2014) ("The interpretation given to parallel provisions of Section 1983 may provide guidance in construing [the New Jersey] Civil Rights Act."); *see also Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011); *Chapman v. New Jersey*, No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *3 (D.N.J. Aug. 25, 2009). Accordingly, Count VII (§ 1983) and Count X (NJCRA) of the Amended Complaint are dismissed as to Defendant Fuentes.

iv. The State Defendants' motion to dismiss Plaintiffs' claims for intentional and negligent infliction of emotional distress is granted as to Defendant Fuentes and otherwise denied.

To plead a claim for intentional infliction of emotional distress, a plaintiff "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Sav. Fund. Society*, 544 A.2d 857, 863 (N.J. 1988). Liability will attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow. *Id.*

In this case, Plaintiffs have alleged Fallen was subjected by Defendant McEnroe to a prolonged period of imprisonment far from his home for a crime that he could prove he had not committed. During that imprisonment, Plaintiffs allege McEnroe verbally abused and threatened Plaintiff after he was arrested and extradited to New Jersey. Plaintiffs have also alleged that on

11

one occasion McEnroe denied Fallen access to a restroom resulting in Fallen urinating on himself. Within the context of McEnroe's refusal—for six months—to listen to the overwhelming exculpatory evidence that would have cleared Fallen's name, Plaintiffs have pled conduct that is extreme and outrageous.  Plaintiffs have also pled a deliberate disregard of a high degree of probability that emotional distress would result.

Additionally, Plaintiffs have sufficiently pleaded a claim for negligent infliction of emotional distress against McEnroe.  The State Defendants focus on only one of two instances in which an individual can maintain an independent tort for negligent infliction of emotional distress, namely seeing the death or serious injury of an intimately familiar relative.  (*See* ECF No. 60-1 at 17.) However, the law is clear that the other instance is when "the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther*, 195 N.J. 91, 104 (2008).  In this case, McEnroe's failure to investigate the exculpatory evidence was, at the very least, negligent conduct which placed Fallen in a reasonable fear of immediate personal injury.  Accordingly, the Court will not dismiss Plaintiffs' claims for intentional and negligent infliction of emotional distress against McEnroe.

However, Plaintiffs have pleaded no facts that would indicate any conduct by Defendant Fuentes that caused Fallen emotional distress.  Accordingly, Plaintiffs' claims against Fuentes for intentional and negligent infliction of emotional distress are dismissed.

**B. The City Defendants' Motion to Dismiss**

i. <u>For purposes of the motions to dismiss, Plaintiffs' Amended Complaint is not time-barred against the newly added defendants.</u>

The last point argued by the City Defendants in their motion to dismiss is a threshold statute of limitations issue regarding Plaintiffs' § 1983 claims against the newly added defendants.  The

City Defendants contend that Plaintiffs' § 1983 claims against the City of Newark, Coley, and DeMaio are time barred because they were not brought within the two-year statute of limitations for § 1983 claims brought in New Jersey. However, construing the facts in a light most favorable to Plaintiffs, the Court will not dismiss Plaintiffs' claims on statute of limitations grounds.

The City Defendants argue that Plaintiffs' causes of action under Section § 1983 accrued no later than the date of Fallen's arrest in Georgia, October 25, 2013. However, construing the facts in a light most favorable to Plaintiffs, as the Court must when deciding a motion to dismiss, the Court will adopt the latest possible date on which Plaintiffs' claims could have accrued. *Cf. O'Boyle v. Braverman*, 337 F. App'x 162, 165-66 (3d Cir. 2009) (looking at "the latest possible date of accrual" for purposes of the statute of limitations analysis); *Borrello v. Elizabeth Bd. of Educ.*, No. 14-3687, 2014 U.S. Dist. LEXIS 97345, at *9 (D.N.J. July 17, 2014) (same). Therefore, solely for purposes of deciding this motion to dismiss, the Court will view the date of accrual of Plaintiffs' causes of action as May 17, 2013—the date on which the grand jury returned a "no bill" on the charges against Fallen.[5] That is arguably the first date on which it became clear that the criminal proceedings had been decided in Fallen's favor (an element of his § 1983 claim for malicious prosecution) and that his arrest and imprisonment had been false (an element of his § 1983 claim for false arrest and imprisonment).

Plaintiff filed his motion to amend the Complaint in this action on May 15, 2015. Courts have held that claims in an amended complaint are deemed filed, for purposes of the statute of limitations, when the motion to amend is filed. *See Javier H. v. Garcia-Botello, et al.*, 239 F.R.D. 342 (W.D.N.Y. 2006) (date of filing of a motion to amend constitutes the date the action was

---

[5] This determination, made solely for purposes of deciding the motion to dismiss, does not preclude Defendants from arguing at a later time that the causes of action accrued on different dates.

13

commenced as to newly added defendant); *Ramirez v. City of Wichita, Kansas*, No. 92-1437, 1994 U.S. Dist. LEXIS 4171 (D. Kan. Mar. 23, 1994) ("[I]f the motion to amend is granted, the suit is deemed filed on the date the motion was filed, not on the date the amended complaint is filed."). The Court adopts the reasoning of those courts and finds that Plaintiffs' motion to amend the complaint on May 15, 2015 commenced the action against the newly added parties. That filing was within two years of the May 17, 2013 "no bill" returned by the grand jury. For the foregoing reasons, the Court will not dismiss Plaintiffs' § 1983 claims against the City of Newark, Coley, and DeMaio as time barred.[6]

### ii. The Court will not consider the affidavits of Hadley and McEnroe submitted by the City Defendants.

As a second threshold issue, the City Defendants contend that this Court can consider the exhibits they submitted with their responsive brief. The Court notes the City Defendants' position that these affidavits were not prepared for purposes of opposing this motion to dismiss and that they were cited extensively by a judge in the Northern District of Georgia in the opinion that transferred the case to this Court. The Court recognizes that, strictly speaking, these documents can be construed as matters of public record for consideration on a motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

However, Plaintiff Fallen originally filed this action against Hadley and McEnroe in Georgia state court. It was removed by Defendants to the Northern District of Georgia and then transferred, upon motion of Defendants, to this district. These procedural steps, for which Plaintiff was not responsible, created an extensive record prior to the motion to dismiss. The Court will not further penalize Plaintiff by considering facts that would not be in the record but for Defendants'

---

[6] At this time the Court makes no finding as to whether the Amended Complaint "relates back" to the original complaint filed in Georgia state court under Federal Rule of Civil Procedure 15(c).

14

litigation strategy. Furthermore, the Court rejects the City Defendants' argument that the Hadley and McEnroe affidavits were relied on by the Amended Complaint. Therefore, these affidavits will not be considered.

As to the Affidavit in Support of Arrest Warrant, though that document was explicitly referenced in the Amended Complaint (*see* Am. Compl. ¶ 65), the City Defendants appear to have provided an incomplete, unsigned, version of the document. (*See* ECF No. 62-5.) Accordingly, the Court will consider it and accord it due weight accounting for the lack of authentication.

### iii. The City Defendants' motion to dismiss Plaintiffs' Monell claim and negligent hiring/training/retention claim is denied.

With respect to Plaintiffs' claims against the City of Newark for its policies (the Monell claim in Count I and the negligent hiring/training/retention claim in Count VIII), the City Defendants essentially contend that Plaintiffs have not identified any specific official policy or custom that caused the deprivation of Fallen's rights. The Court, however, finds that Plaintiffs have done as much as they can be expected to do at the pleading stage. The Amended Complaint identifies evidence of a Department of Justice ("DOJ") investigation into a long-standing history of constitutional violations by the Newark Police Department that includes the type of behavior that resulted in the alleged deprivation of Fallen's rights. The DOJ's publicly available report, cited by the Complaint, is dated July 22, 2014 and includes an investigation during the time that Fallen was allegedly being deprived of his rights. The Amended Complaint sets forth allegations that the policies to which it is referring are inadequate misconduct investigations, inadequate supervision, and inadequate training, all of which are extensively discussed in the DOJ report.

Furthermore, the Amended Complaint sets forth allegations that, had the proper policies been in place, Fallen would not have been deprived of his rights. Fallen was allegedly improperly imprisoned for five months under the custody and control of the City of Newark. The allegation

15

that no policy was in place to prevent this incident—or to rectify it at any point during the five months—is sufficient to assert a claim. Accordingly, the City Defendants' motion to dismiss Plaintiffs' Monell claim (Count I) and negligent hiring/training/retention claim (Count VIII) against the City of Newark is denied.

 iv. The City Defendants' motion to dismiss Plaintiffs' claims against Hadley on the basis of qualified immunity is denied.

The City Defendants move to dismiss claims against Hadley on the basis that he had qualified immunity as a law enforcement officer. The crux of the City Defendants' arguments is that Hadley was far less involved in the investigation than Plaintiffs allege he was. That is a factual argument that would require the Court to weigh the evidence of Hadley's involvement, including the affidavits submitted by the City Defendants. *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury."). At the motion to dismiss stage, however, the Court will accept the well-pleaded facts in the Amended Complaint as true.

As the City Defendants argue, law enforcement officers are given ample room for mistaken judgments. *See Malley v. Briggs*, 475 U.S. 335, 343 (1986). The question is not whether the officer was wrong but rather whether a reasonable police officer would believe that his conduct was lawful. *See Schneider v. Simonini*, 163 N.J. 336, 355 (2000). In this case, Plaintiffs have pleaded sufficient facts that, taken as true, demonstrate Hadley's extensive involvement in the investigation of Fallen such that a reasonable officer would have recognized that his conduct was not lawful. The allegations indicate an extended period of time during which Hadley had numerous opportunities to investigate exculpatory evidence.

16

Ultimately, the City Defendants' argument rests on the unsupported statement that Hadley "had very limited involvement in the matter." (ECF No. 62-1 at 21.) The Amended Complaint tells a different story. That is a factual dispute that will not be decided at this time. Accordingly, the Court will not dismiss Plaintiffs' claims against Hadley.

> v. The City Defendants' motion to dismiss Plaintiffs' malicious prosecution claim is denied.

The City Defendants argue that Plaintiff has not pleaded the "malice" element of "malicious prosecution." However, the element of malice "may be inferred from lack of probable cause." *Morales v. Busbee*, 972 F. Supp. 254, 261 (D.N.J. 1997). In this case, accepting the pleaded facts as true, there was no probable cause and there are sufficient facts to demonstrate that Hadley acted with "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Id.* The Amended Complaint pleads facts from which a reasonable inference can be made that both McEnroe and Hadley improperly placed the importance of solving a murder case ahead of Fallen's civil rights. Accordingly, the malicious prosecution claim (Count V) will not be dismissed.

> vi. The City Defendants' motion to dismiss Plaintiffs' conspiracy claim is denied.

For the reasons set forth above with respect to the State Defendants' partial motion to dismiss, the Court will not dismiss Plaintiffs' conspiracy claim (Count VI).

> vii. The City Defendants' motion to dismiss Plaintiffs' supervisory liability claim is granted as to Defendants Coley and DeMaio.

For the reasons set forth above with respect to the State Defendants' partial motion to dismiss, the Court will dismiss Plaintiffs' claims for supervisory liability (Count VII) against Defendants Coley and DeMaio only. However, for the reasons discussed with respect to Plaintiffs' Monell and negligent hiring/training/retention claims against the City of Newark, the Court will not dismiss Plaintiffs' claim for supervisory liability against the City of Newark.

17

viii.   The City Defendants' motion to dismiss Plaintiffs' emotional distress claims against Hadley is denied.

For the reasons set forth above with respect to the State Defendants' partial motion to dismiss, the Court finds that Plaintiffs have adequately pleaded causes of action for negligent and intentional infliction of emotional distress.  The City Defendants' argument relies on factual disputes about the extent of Hadley's involvement.  As discussed, those factual disputes will be resolved in favor of Plaintiffs at this point.  Accordingly, the Court will not dismiss Plaintiffs' emotional distress claims (Count IX) against Hadley.

ix.   The City Defendants' motion to dismiss Plaintiffs' emotional distress claims against the City of Newark, Coley, and DeMaio is granted.

Similar to Defendant Fuentes, the Complaint makes no allegations that would support a cause of action for negligent or intentional infliction of emotional distress against either Coley or DeMaio in their individual capacities.  Furthermore, the City Defendants argue that Plaintiffs failed to provide proper notice under the Tort Claims Act for their state law claims against Defendants City of Newark, Coley in her official capacity, and DeMaio in his official capacity.  Plaintiffs concede this fact but argue that their claims are brought under § 1983.  That appears to be true for all claims except the claims for negligent and intentional infliction of emotional distress.  Accordingly, Plaintiffs' emotional distress claims (Count IX) will be dismissed as to Defendants City of Newark, Coley and DeMaio.

x.   The City Defendants' motion to dismiss Plaintiffs' claim for punitive damages is granted as to all City Defendants except Hadley in his individual capacity.

Plaintiffs concede that they cannot state a claim for punitive damages against the City of Newark or Hadley in his official capacity.  Plaintiffs, however, contend that they are entitled to punitive damages from Hadley in his individual capacity.  The City Defendants' only response to this is that Hadley had limited involvement.  Again, that is a factual, disputed issue and will be

18

viewed in favor of Plaintiffs at this stage. Accordingly, the Court will not dismiss Plaintiffs' claim

for punitive damages (Count XI) against Hadley in his individual capacity.

## V.   **CONCLUSION**

For the foregoing reasons, the following is the Court's ruling on dismissal of Plaintiffs'

claims:

- Count I:        Not dismissed.
- Count II:       Claim dismissed without prejudice against NJSP only.
- Count III:      Claim dismissed without prejudice against NJSP only.
- Count IV:       Not dismissed
- Count V:        Claim dismissed without prejudice against NJSP only.
- Count VI:       Claim dismissed without prejudice against NJSP only.
- Count VII:      Claims dismissed without prejudice against NJSP, Coley, DeMaio, and Fuentes.
- Count VIII:     Claim dismissed without prejudice against NJSP only.
- Count IX:       Claims dismissed without prejudice against NJSP, Coley, DeMaio, Fuentes, and City of Newark.
- Count X:        Claims dismissed without prejudice against NJSP, Coley, DeMaio, and Fuentes.
- Count XI:       Claims dismissed without prejudice against Coley, DeMaio, and Fuentes.[7] Claims also dismissed without prejudice against Hadley in his official capacity only.
- Count XII:      Claims dismissed without prejudice in accordance with the above.[8]

---

[7] As all of the underlying causes of action against Coley, DeMaio, and Fuentes are being dismissed, dismissal of the claim for punitive damages is appropriate. *See, e.g.*, *Barkley v. Ricci*, No. CIV. 07-2760 (AET), 2008 WL 852375, at *4 (D.N.J. Mar. 28, 2008) ("Since Plaintiff's underlying claims have failed, his claim for punitive damages must also fail.").

[8] As a per quod claim is a derivative claim, Count XII is dismissed to the extent the underlying claims have been dismissed. *See Toscano v. Borough of Lavallette*, No. CIV A. 04-4412 (MLC), 2006 WL 1867197, at *10 (D.N.J. June 30, 2006) ("A per quod claim is a derivative claim that depends o[n] the existence of another cause of action.").

An appropriate Order accompanies this Opinion.

Dated: _____ 24 ___, 2017

_____
**HON. CLAIRE C. CECCHI**
**United States District Judge**